UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

ROBERTO BERAS,

               Petitioner,

  - against -

UNITED STATES OF AMERICA

            Respondent.

————————————————————X

SHIRA A. SCHEINDLIN, U.S.D.J.:

**OPINION AND ORDER**

05 Civ. 2678 (SAS)
99 CR 75 (BSJ)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/20/13

## TABLE OF CONTENTS

I.     INTRODUCTION............................................ 1

II.    BACKGROUND............................................. 2
    A.   The Offense Conduct. .................................... 2
    B.   The Jury Verdict and Sentencing. ......................... 4
    C.   Direct Appeal and Post-Verdict Motions. .................... 5
    E.   Beras's Petition Under Section 2255........................ 15
    F.   Beras's Supplemental Motions............................ 17
        1.   Motions Filed in the Civil Docket. .................... 17
        2.   Motions Filed in the Criminal Docket................... 19
        3.   The Grounds Alleged in the Supplemental Motions...... 21
            a.   Category One: Motions that Relate Back to the
               Petition...................................... 22
            b.   Category Two: Motions that Do Not Relate Back to
               the Petition. ................................. 24
            c.   Category Three: Motions Not Cognizable on Section
               2255 Collateral Review........................ 32

III.   LEGAL STANDARD....................................... 33
    A.   Section 2255........................................... 33
    B.   Ineffective Assistance of Counsel.......................... 34

C.    Amendments to Habeas Petitions. . . . . . . . . . . . . . . . . . . . . . . . . 36
D.    Claim Preclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

IV.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
A.    Precluded Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
      1.    Ineffective Assistance of Counsel Claims Barred by the
            Mandate Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
      2.    Other Precluded Claims. . . . . . . . . . . . . . . . . . . . . . . . . 43
            a.    Claims Barred by the Mandate Rule . . . . . . . . . . . 43
            b.    Claims Precluded Because They Could Have Been
                  Brought on Direct Review. . . . . . . . . . . . . . . . . . . 45
B.    The Remaining Grounds for Relief Are Without Merit. . . . . . . 48
      1.    The Government's Summation Statements Did Not Include
            Improper Bolstering, and Therefore Did Not Amount to
            Prosecutorial Misconduct. . . . . . . . . . . . . . . . . . . . . . . . 49
      2.    Counsel's Failure to Object on the Basis of the Federal
            Anti-Gratuity Statute Does Not Constitute Ineffective
            Assistance of Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . 50
      3.    Trial Counsel's Alleged Failure to Properly Advise Beras to
            Plead Guilty Does Not Constitute Ineffective Assistance of
            Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
      4.    The Remaining Grounds for Relief Fail Because they
            Amount To Second-Guessing Counsel's Reasonable Trial
            Strategy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

## I.   INTRODUCTION

Petitioner Roberto Beras, proceeding pro se, petitions this Court under 28 U.S.C. § 2255 ("Section 2255") for a writ of habeas corpus.[1]  Also before the Court are a number of supplemental motions (the "Supplemental Motions") that Beras has filed in both the civil docket and the criminal docket.

On December 4, 2000, after a four-week trial in this District, a jury returned a verdict finding Beras guilty of a number of crimes related to an international money laundering conspiracy.  The next day, the jury returned a verdict ordering that Beras forfeit ten million dollars in proceeds of this money laundering.  On November 21, 2001, the Southern District of New York (Judge Shirley Wohl Kram) sentenced Beras to concurrent terms of imprisonment of 292 months and three years of supervised release.  Beras's sentence and conviction were subsequently affirmed by the Second Circuit, and the Supreme Court denied a writ of certiorari.[2]

The numerous grounds for relief that Beras alleges in the Petition and

---

[1]    *See* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Petition"), submitted to prison officials for mailing February 17, 2005.

[2]    *See United States v. Dinero Express, Inc.*, 57 Fed. App'x 456, 459 (2d Cir. 2002); *United States v. Dinero Express, Inc.*, 313 F.3d 803, 804 (2d Cir. 2002), *cert. denied,  Beras v. United States*, 540 U.S. 1184 (2004), *reh'g denied*, 541 U.S. 1057 (2004).

Supplemental Motions are set forth below.  For the following reasons, the Petition is denied.

## II.    BACKGROUND

### A.    The Offense Conduct[3]

Superseding Indictment S3 99 Cr. 075 (the "Indictment"), containing eighty-two counts, was filed on April 18, 2000.  Count One charged Beras and co-defendants Dinero Express, Inc. and Luis Francisco Soriano with conspiracy to launder money, in violation of 18 U.S.C. § 1956(h).  Count Two charged Beras, Dinero Express, Soriano, and co-defendant Maria Mendoza with conspiracy to structure transactions and avoid currency reporting requirements, in violation of 18 USC § 371.  Counts Three through Thirty-Five charged Beras and Dinero Express with engaging in money laundering in violation of 18 U.S.C. §§  1956(a)(2)(B).  Counts Thirty-Six through Forty-One charged Beras and Dinero Express, and County Forty-Two charged Beras, Dinero Express, and Soriano, with engaging in money laundering, in violation of 18 U.S.C. § 1956(a)(3).  Counts Forty-Three through Seventy-Five charged Beras, Dinero Express, and Mendoza with structuring financial transactions in violation of 31 U.S.C. § 5324(a)(3) and 18

---

[3]    The facts underlying this case have been laid out at length in a number of Second Circuit opinions.  *See, e.g., Dinero Express, Inc.*, 57 Fed. App'x 456. Familiarity with the facts and the record of these prior proceedings is presumed.

2

U.S.C. § 2.  Finally, Counts Seventy-Six through Eighty-One charged Beras and Dinero Express, and Count Eighty-Two charged Beras, Dinero Express, and Soriano, with causing a financial institution to fail to file a currency transaction report, in violation of 31 U.S.C. § 5324(a)(1) and 18 U.S.C. § 2.

Trial on the Indictment commenced on November 8, 2000 before Judge Shirley Wohl Kram.  The evidence at trial demonstrated that from 1994 to 1996, as vice-president and co-owner of Dinero Express, a licensed money remitter, Beras supervised an extensive money laundering conspiracy which used Dinero Express and its employees to launder tens of millions of dollars in narcotics proceeds from the United States to foreign countries, primarily the Dominican Republic.

In exchange for commissions that generally totaled five percent of each transaction, Beras and his co-conspirators accepted from area drug traffickers cash deposits known to be the proceeds of illegal narcotics sales, and then arranged for the transfer of those deposits from Dinero Express's headquarters in Manhattan to the trafficker's international associates.  Beras was involved in nearly every facet of the laundering operation, including recruiting drug-trafficker clients, receiving the cash deliveries, arranging for the deposit of the cash into Dinero Express's bank accounts, overseeing the transmission of the funds to the

3

Dominican Republic, and ultimately arranging for the payment of the international traffickers. Beras's sole defense at trial was that he had no knowledge of Dinero Express's money laundering, and that the Government's cooperating witnesses had lied about his knowledge of and involvement with the scheme in order to receive leniency from the Government.

### B. The Jury Verdict and Sentencing

On December 4, 2000, the jury found Beras and Dinero Express guilty of all eighty-two counts in the Indictment. The next day, the jury deliberated on the forfeiture allegations, and returned a verdict ordering that Beras forfeit ten million dollars in proceeds of the laundering.

At trial, Beras was represented by Charles A. Ross.[4] On February 21, 2001, Beras retained new counsel, David Zapp.[5] Zapp, on behalf of Beras, filed a post-trial motion requesting a *Fatico* hearing in which the Government would be required to produce its confidential informant to testify. Consistent with her prior holdings, Judge Kram denied this motion.[6] Beras did not file any other post-trial motions prior to sentencing.

---

[4] *See* Petition at 6.

[5] *See id.*

[6] *See* 11/20/01 Memo Endorsement, 99 Cr. 75 Doc. No. 63.

Subsequently, on November 21, 2001, Beras was sentenced to 292 months' imprisonment, three years' supervised release, and a $4,100 mandatory special assessment, as well as an order of forfeiture in the amount of ten million dollars.

## C.    Direct Appeal and Post-Verdict Motions

On direct appeal, Beras, represented by Zapp, challenged his convictions and sentence on numerous grounds, including that: (1) the Government denied him due process by waiting five years to bring the prosecution;[7] (2) he was entitled to severance from his co-defendants based on the opening statements of one of his co-defendant's counsel;[8] (3) the trial court's evidentiary rulings violated his constitutional right to present a defense;[9] (4) the charges against him were multiplicitious in violation of the Double Jeopardy Clause;[10] (5) his Guidelines sentence was incorrectly calculated because the trial judge found relevant conduct that had not been placed before the jury;[11] and (6) the transfers at the heart of his

---

[7]     *See Dinero Express, Inc.*, 57 Fed. App'x at 458.

[8]     *Id*. at 459.

[9]     *See id*. at 460.

[10]     *See id*. at 461.

[11]     *See id*. at 462.

5

scheme did not constitute money laundering.[12]  Beras also raised several ineffective

assistance of trial counsel claims through two "supplemental pro se briefs."

Because these claims were not record based, and therefore more suitable for

collateral review than direct review, the Second Circuit did not address them.[13]

       In two opinions, issued on December 19 and 20, 2002, the Second

Circuit affirmed Beras's conviction and sentence.[14]  The Circuit rejected Beras's

pre-indictment delay argument because the Government delayed Beras's

prosecution in order to investigate his conduct, not for an improper purpose.[15]

Beras's severance argument was rejected because he could not identify a specific

trial right that was infringed by his co-defendants' defenses, and because the

District Court issued a curative instruction.[16]  The Second Circuit also rejected

Beras's argument that his convictions for money laundering and structuring

financial transactions were multiplicitous, because each allegedly multiplicitous

---

[12]    *See Dinero Express, Inc.*, 313 F.3d at 804-05.

[13]    *See Dinero Express, Inc.*, 57 Fed. App'x at 462.

[14]    *See id.* (addressing all of Beras's arguments except his argument that the transfers were not money laundering); *Dinero Express, Inc.*, 313 F.3d at 803 (separately addressing Beras's money laundering argument).

[15]    *See Dinero Express, Inc.*, 57 Fed. App'x at 459.

[16]    *See id.* at 460.

charge required proof of an element that the other did not.[17]

Beras also challenged three evidentiary rulings of the District Court that: (1) prohibited him from eliciting testimony concerning the credibility of a Government informant after tapes of the informant had been admitted into evidence; (2) admitted into evidence testimony by an FBI agent on the money remitting business in general, the operations of legal and illegal money remitters, and the connections between drug trafficking and money laundering; and (3) admitting falsified remittance forms into evidence under the business records exception.  The Second Circuit affirmed these rulings on the respective grounds that: (1) Beras's inability to elicit credibility testimony did not violate the Confrontation Clause, because the tapes were admitted into evidence to give context to recordings of Beras, not for the truth of the matters asserted; (2) the FBI agent's testimony was not used to improperly bolster the Government's case with respect to a fact at issue at trial; and (3) the falsified remittances were properly admitted, because they were used to show the sham nature of the transactions, not to prove the truth of the matters asserted.[18]

Beras challenged the District Court's sentencing enhancements on two

_____

[17]     *See id*. at 461 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

[18]     *See id*. at 460-61.

7

grounds: *first*, that the District Court found allegedly disputed facts related to sentencing by a preponderance of the evidence; and *second*, that the Court found that the object of Beras's money laundering conspiracy was to promote narcotics trafficking, in violation of 18 U.S.C. § 1956(a)(3)(A).  The Second Circuit affirmed Beras's sentence, holding that disputed facts pertinent to sentencing may be found by a preponderance of the evidence, and that the District Court was entitled under the Sentencing Guidelines and the evidence presented to find that the object of the conspiracy at issue was narcotics trafficking.[19]

Finally, the Second Circuit wrote a separate opinion addressing Beras's contention that no single step in the fraudulent remittance scheme constituted a "transfer . . . [of] a monetary instrument or funds from a place in the United States to or through a place outside the United States" under the international money laundering statute, because no step involved money being wired directly to the Dominican Republic.[20]  The scheme had four steps:

> *First*, drug traffickers delivered their cash to Dinero's New York headquarters for gradual deposit into the company's bank accounts in the United States.
>
> *Second*, Dinero remittance invoices were generated for fictitious transactions to the Dominican Republic; the invoices used false

---

[19]     *See id.* at 462.

[20]     18 U.S.C. § 1956(a)(2).

8

identities and addresses and were made out in amounts small enough to avoid currency reporting requirements.

*Third*, arrangements were made for a Dominican "peso supplier" to advance local currency – in the same amount as the original deposit delivered to Dinero's New York headquarters, minus commission – to Dinero's Dominican office, which in turn forwarded the cash to the drug traffickers' Dominican personnel under the pretense of fulfilling the fictitious remittances generated in New York.

*Fourth*, the process culminated with Dinero's repayment of the peso supplier through a wire transfer of funds from Dinero's New York operating account to the peso supplier's bank accounts in the United States.[21]

The Second Circuit first noted that, under its precedents, "a multi-step plan to transfer money from one location to another should be viewed as a single 'transfer' under § 1956(a)(2) . . . ."[22]  Applying this test, the court then held that, because money is fungible, the substance of the four-step process was to "transfer" money from the United States to the Dominican Republic.[23]  The court therefore affirmed Beras's conviction under the money laundering statute.

_____

[21]     *Dinero Express, Inc.*, 313 F.3d at 805.

[22]     *Id*. at 806.

[23]     *See id*. at 807 ("[W]e hold that a course of conduct that begins with a sum of money located in one country and ends with a related sum of money located in another may constitute a 'transfer' for purposes of § 1956(a)(2).  This is true whether or not the particular transactional vehicle for effecting the 'transfer' is comprised of a single step or a series, and whether or not the funds move directly between an account in the United States and one abroad.").

On March 28, 2003, Beras submitted a pro se "Petition for Rehearing and Suggestion for Rehearing En Banc" in which he raised additional attacks on his conviction, including that: (1) statements by co-defendant Mendoza and cooperating witness Hendrix Tavares, among others, should have been introduced at trial to prove his innocence; (2) the trial court should have instructed the jury on whether the term "proceeds" in the money laundering statute meant net or gross income; and (3) certain statements made in the Government's summation, whereby the Government allegedly improperly vouched for certain witnesses through statements like "'the [G]overnment submits to you that Mr. Tavare[s] was being completely truthful[,]'" constituted prosecutorial misconduct.[24]  Beras also restated many of the arguments raised in his direct appeal.[25]

On July 2, 2003, while his motion for a rehearing was still pending, Beras moved the District Court to dismiss the Indictment on the grounds that: (1) Congress acted outside of the scope of its enumerated powers when it promulgated 18 U.S.C. § 1956; and (2) "[t]he federal Government and [] [the District Court] lack territorial jurisdiction over this case because the federal [G]overnment does

---

[24]     *United States v. Dinero Express, Inc. et al.*, No. 01-1634, 2003 WL 23924817 (2d Cir. App. Petition Mar. 28, 2003) (quoting Trial Transcript ("Tr.") at 1605).

[25]     *See id.*

10

not have control over the geographical location where the crime took place and because the federal [G]overnment may not investigate Dinero Express, Inc. because Dinero Express, Inc. was regulated by the New York State Banking Commission, a State agency."[26]  The District Court denied the motion, holding that Congress acted within the scope of the commerce power in promulgating the money laundering statute, and that it was irrelevant that the United States did not have exclusive control over the areas where Beras's crimes took place.[27]  The Second Circuit then denied Beras's motion for a rehearing.

On February 23, 2004, the Supreme Court denied Beras's petition for a writ of certiorari on his direct appeal.[28]  His conviction therefore became final on that day,[29] giving him until February 23, 2005 to file a petition,  *i.e.* deliver it to prisoner authorities.[30]  The Certificate of Service attached to the Petition states that

---

[26]     *United States v. Beras*, No. 99 Cr. 75, 2004 WL 203041, at *1 (S.D.N.Y. Feb. 2, 2004).

[27]     *See id*. at *2.

[28]     *See Beras*, 540 U.S. 1184, *reh'g denied*, 541 U.S. 1057.

[29]     *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").

[30]     *See  Houston v. Lack*, 487 U.S. 266, 276 (1988) (stating the prison mailbox rule); 28 U.S.C. § 2255(f)(1).

11

it was mailed on February 17, 2005, and the sworn Notice of Motion, also attached to the Petition, is also dated February 17, 2005.  Therefore, the Petition was timely filed.[31]

Because the timeliness of Beras's Supplemental Motions is at issue in this case, it is worth noting the Government's position on a predicate issue, the timeliness of the Petition.  In its opposition, the Government erroneously states that: (1) "Beras's conviction become [sic] final on August 16, 2004, 90 days after the Supreme Court denied certiorari[;]" and (2) "[t]he Petition was filed on March 9, 2005 . . . ."[32]  Both points are wrong: the ninety-day rule applies when the defendant does not seek a writ of certiorari, and pro se habeas petitions are deemed filed when tendered to prison officials.

On December 1, 2003, Beras moved the District Court for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, and on December 5, 2003, Beras separately moved the District Court to dismiss the Indictment under Federal Rule of Criminal Procedure 12(b).  The District Court denied both

---

[31]     *See Moshier v. United States*, 402 F.3d 116, 117 (2d Cir. 2005) (applying the prison mailbox rule to a Section 2255 motion, and determining the date of filing under this rule with reference to, among other things, the certificate of service attached to the petition).

[32]     The Government's Memorandum of Law in Opposition to Roberto Beras's Motion to Vacate or Set Aside Convictions and Sentence Pursuant to 28 U.S.C. § 2255 ("Gov. Mem.") at 28 (citation omitted).

motions, and both of these decisions were affirmed by the Second Circuit.[33]

Beras's motion to dismiss the Indictment under Rule 12(b) was based on a selective prosecution defense.  The Second Circuit held that the District Court committed a clear legal error by excusing Beras's waiver of this defense, given that it had unjustifiably been raised post-verdict, but that this error was harmless because the District Court was correct to deny the defense on the merits.[34]

Beras's motion for a new trial was based on: (1) certain allegedly newly-discovered exculpatory statements by co-defendant Mendoza, unindicted co-conspirator Rafael Liriano, and prosecution witness Gustavo Felipe, and (2) inconsistencies between cooperating witness Tavares's trial testimony and plea allocution.  Beras also argued that he was entitled to re-sentencing under *Apprendi v. New Jersey*[35] and *United States v. Booker*.[36]  The Second Circuit affirmed the

---

[33]    *See United States v. Beras*, 131 Fed. App'x 313 (2d Cir. 2005) (affirming denial of Rule 12(b) motion); *United States v. Beras*, 152 Fed. App'x 50 (2d Cir. 2005) (affirming denial of Rule 33 motion).

[34]    *See Beras*, 131 Fed. App'x at 313 ("As the district court correctly found, Beras failed to present evidence sufficient to demonstrate that: (1) others, similarly situated to him and his company, Dinero Express, Inc., had not been prosecuted for money laundering; or (2) the Government's decision to prosecute him was based on an impermissible consideration such as race.").

[35]    530 U.S. 466 (2000).

[36]    543 U.S. 220 (2005).

District Court's denial of Beras's motion for a new trial because: (1) the statements of Mendoza and Liriano had been disclosed to the defense prior to trial under 18 U.S.C. § 3500; (2) Beras's unsupported description of the statements of Felipe was insufficient to overcome the Government's credible declaration that it had no knowledge of exculpatory statements from Felipe, and in any event Beras had offered no reasons why he was unable to discover Felipe's statement prior to trial; and (3) even if Tavares's trial testimony and plea allocution were inconsistent, these inconsistencies were immaterial, and certainly did not amount to perjury.[37] The Second Circuit further held that Beras was not entitled to re-sentencing under *Booker*, because it is not retroactive and Beras's conviction was final before it issued.[38]

### E.    Beras's Petition Under Section 2255

Beras asserts six grounds in support of his Petition.  *First*, he claims that his Sixth Amendment right to the effective assistance of counsel was violated when his lawyer failed to: (1) investigate and prepare adequately for trial; (2) produce certain expert witnesses; (3) allege selective prosecution; (4) move for severance based on a conflict of interest between Beras and his co-defendants, as

---

[37]    *See  Beras*, 152 Fed. App'x at 51.

[38]    *See id*. at 52 (citing *Guzman v. United States*, 404 F.3d 139, 141 (2d Cir. 2005)).

well as Beras's defense counsel and those of his co-defendants; (5) object to or

contest statements made by the confidential informant that were allegedly

inconsistent with statements made in an unrelated case, and statements by a

cooperating witness in relation to that witnesses's plea allocution; (6) properly

advise Beras to plead guilty; (7) object, on the basis of the federal anti-gratuity

statute,[39] to the Government's use of recorded conversations and testimony of a

cooperating witness; (8) permit Beras to testify on his own behalf, as well as call

various expert witnesses to testify; (9) object to prosecutorial misconduct related to

statements made during the Government's summation; (10) introduce certain

exculpatory evidence in his possession; and (11) argue for suppression of wiretap

evidence that was not properly sealed.[40]

      *Second*, Beras alleges that his Sixth Amendment right to a jury trial

was violated because Judge Kram impermissibly found several enhancements to

Beras's base offense level under the Sentencing Guidelines by a preponderance of

the evidence.[41]  *Third*, he alleges that his Confrontation Clause rights were violated

because a confidential informant did not testify at trial despite the introduction of

---

[39]     18 U.S.C. § 201(c)(2).

[40]     *See* Memorandum of Law in Support of Petition ("Pet. Mem") at 5-35; 62-69; 89-102.

[41]     *See id*. at 36-43.

tape recordings involving Beras and the informant, as well as due to the introduction of statements made by a cooperating witness through the testimony of a law enforcement officer.[42]  *Fourth*, he argues that limiting instructions by the trial judge did not cure prejudice caused by certain statements made by the Government and counsel for his co-defendants in their opening and summations.[43]  *Fifth*, Beras challenges his convictions and sentence on the basis that the trial judge did not allow him to present a defense because she sustained various objections by the Government to defense counsel's questioning of a cooperating witness.[44]  And *sixth*, Beras argues that his right to a fair trial was violated when his attorney shared certain information with defense counsel for Beras's co-defendants.[45]

### F.    Beras's Supplemental Motions

In addition to his hundred and four page Petition, Beras has caused seventeen supplemental motions to be filed in both the civil and criminal docket. By an Order dated February 21, 2007, the Court directed the Clerk of Court to "accept no further supplements or amendments to Beras's 2255 petition."[46]  This

---

[42]    *See id*. at 43-56.

[43]    *See id*. at 56-61.

[44]    *See id*. at 69-75.

[45]    *See id*. at 102-103.

[46]    Order, 99 Cr. 75, Doc. No. 133, at 2.

Order has been honored in the breach: five Supplemental Motions were filed after it issued.  By an Order dated September 19, 2012, this Court directed the Government to respond to the Petition and Supplemental Motions.[47]  In the same Order, the Court granted four motions in the Civil Docket, 05 Civ. 2678, which requested additional briefing.[48]

A partial list of Beras's Supplemental Motions follows.  The dates given reflect the prison mailbox rule, not the date of filing by the Clerk of Court.

1.    **Motions Filed in the Civil Docket**

(1)    7/8/06 Supplemental Pleadings Under Federal Rules of Civil Procedure Rule 15(c) ("Supplemental Motion One").[49]

(2)    8/9/06 Motion for Inclusion of Additional Cases ("Supplemental Motion Two").[50]

(3)    9/28/09 Petitioner's Motion for Inclusion of Additional Case and Request for Immediate Release ("Supplemental Motion

---

[47]    *See* Order, 05 Civ. 2678, Doc. No. 23.

[48]    *See id.*, Doc. No. 23 at 3 ("In the civil case, petitioner has also filed the following Motions for the Inclusion of Additional Cases: Document # 3, 10, 13 and 17.  These motions, which consist of supplemental briefing which may or may not be relevant, are granted in full.").

[49]    *Id.*, Doc. No. 2.

[50]    *Id.*, Doc. No. 3.

Three").[51]

(4)     8/15/11 Motion For an Order Under Federal Rule of Civil

Procedure 15(a), and in light of *Bullcoming v. New Mexico*,

2011 U.S. Lexis 4790 ("Supplemental Motion Four").[52]

(5)     6/13/08 Declaration in Support of Motion for Inclusion of

Additional Cases ("Supplement Motion Five").[53]

(6)     4/23/12 Declaration in Support of Motion for Inclusion of

Additional Case ("Supplemental Motion Six").[54]

(7)     11/26/12 Motion to Amend Petitioner's Initial Motion Under 28

U.S.C. § 2255 and in Light of *United States v. Gupta*, 2d Cir.

No. 09-4738-cr ("Supplemental Motion Seven").[55]

**2.     Motions Filed in the Criminal Docket**

(8)     6/10/05 Supplemental Pleadings Based on Rules of Civil

Procedure Rule 15(a) ("Supplemental Motion Eight").[56]

---

[51]     *Id.*, Doc. No. 10.

[52]     *Id.*, Doc. No. 11.

[53]     *Id.*, Doc. No. 13

[54]     *Id.*, Doc. No. 17.

[55]     *Id.*, Doc. No. 25.

[56]     99 Cr. 75, Doc. No. 111.

(9)    6/7/05 Supplemental Pleadings Based on Rule of Civil

Procedure Rule 15(a) ("Supplemental Motion Nine").[57]

(10)   12/28/05 Petitioner's Motion Under Rules of Civil Procedure

Rule l5(a) Supplementing His Habeas Corpus Petition Under

Title 28 U.S.C. § 2255 ("Supplemental Motion Ten").[58]

(11)   2/5/06 Motion to Dismiss Counts 3 Through 35 of the

Indictment ("Supplemental Motion Eleven").[59]

(12)   7/13/06 Petitioner's Corrected Supplemental Pleadings

("Supplemental Motion Twelve").[60]

(13)   1/18/07 Motion Pursuant to Federal Rules of Civil Procedure,

Rule 15(a) and in Light of the Recent Supreme Court's

Authority in *Zedner v. United States* ("Supplemental Motion

Thirteen").[61]

(14)   2/8/07 Motion for Inclusion of Additional Case ("Supplemental

---

[57]    *Id*., Doc. No. 112.

[58]    *Id*., Doc. No. 118.

[59]    *Id*., Doc. No. 119.

[60]    *Id*., Doc. No. 124.

[61]    *Id*., Doc. No. 132

Motion Fourteen").[62]

(15)   5/6/08 Motion to Hold Case in Abeyance Pending Supreme

Court Decision in *United States v. Santos* ("Supplemental

Motion Fifteen").[63]

(16)   8/15/11 Motion For an Order Under Federal Rule of Civil

Procedure 15(a), and in light of *Bullcoming v. New Mexico*,

2011 U.S. Lexis 4790 ("Supplemental Motion Sixteen").[64]

(17)   2/20/12 Motion Under Federal Rules of Civil Procedure, Rule

60(b) and in Light of *Bond v. United States* ("Supplemental

Motion Seventeen").[65]

**3.     The Grounds Alleged in the Supplemental Motions**

None of the Supplemental Motions were filed on or by February 23,

2005, and none of them relate back to the Petition under Federal Rules of Civil

Procedure 15(c)(1)(a).  And none of them set out "any transaction, occurrence, or

event that happened after the date of" the Petition, meaning that they are not

---

[62]     *Id.*, Doc. No. 134

[63]     *Id.*, Doc. No. 140.

[64]     *Id.*, Doc. No. 142.

[65]     *Id.*, Doc. No. 143.  This motion is identical to Supplemental Motion

Three.

properly supplemental pleadings.[66]  Therefore, to the extent that the Supplemental

Motions seek to add claims not raised in the Petition, those claims must arise "out

of the conduct, transaction, or occurrence set out – or attempted to be set out – in

the [Petition]."[67]

   Beras's Supplemental Motions can therefore be divided into three

categories.  The first category consists of motions that either offer additional

briefing on issues raised in the Petition, or raise claims that relate back to the

Petition.  The second category consists of motions that do not relate back to the

Petition.  The third category consists of motions that cannot properly be raised in a

Section 2255 petition.

   **a.**  **Category One: Motions that Relate Back to the Petition**

   Supplemental Motions Two, Six, Eight, Ten, Twelve, and Fourteen

comprise category one.  Supplemental Motion Two urges the Court to consider

five cases that relate to various claims raised in the Petition.[68]  Supplemental

---

[66] Fed. R. Civ. P. 15(d).

[67] Fed. R. Civ. P. 15(c)(1)(B).  The relation back doctrine, as applied to petitions under Section 2255, is more fully described below.

[68] *See* Supplemental Motion Two at 1 ("Petitioner . . .  moves this Court for permission to include additional cases, specifically . . . *United States v. Crosby*, 397 F.3d 103 (2[]d Cir. 2005); *United States v. Gonzales*, 420 F.3d 111 (2[]d Cir. 2005); *United States v. Cordova-Murgas*, 422 F.3d 65 (2[]d Cir. 2005); and

Motion Eight offers additional briefing on whether the trial judge impermissibly found enhancements to Beras's base offense level under the Sentencing Guidelines by a preponderance of the evidence.[69]  It argues that *Apprendi v. New Jersey*[70] and its progeny are watershed rules of procedure that are retroactive on collateral review under *Teague v. Lane*.[71]  Similarly, Supplemental Motion Ten restates the argument that Beras made on direct appeal that, under *Booker*, the trial judge erred by finding certain sentencing enhancements rather than submitting them to the jury.[72]  And in the same vein, Supplemental Motion Fourteen urges the Court to consider *Cunningham v. California*,[73] a Supreme Court case extending the holding of *Apprendi*.

---

*United States v. Johnson*, 430 F.3d 383 (6th Cir. 2005); and *Holmes v. South Carolina*, [547 U.S. 319] ([] 2006)").

[69]    *See* Supplemental Motion Eight at 14.

[70]    530 U.S. 466 (2000).

[71]    489 U.S. 288 (1989).  *See* Supplemental Motion Eight at 6.  *Cf. Coleman v. United States*, 329 F.3d 77, 90 (2d Cir. 2003) ("[W]e conclude that *Apprendi* does not apply retroactively to initial section 2255 motions for habeas relief.").

[72]    *See* Supplemental Motion Ten at 9 ("In light of the district court's clear use of facts not found by the jury to increase Beras's sentence by a substantial amount (nearly ten times), Mr. Beras's sentence should be vacated and Mr. Beras [] resentenced in a manner consistent with *United States v. Booker*").

[73]    549 U.S. 270 (2007).

Through Supplemental Motions Six and Twelve, Beras argues that he received ineffective assistance from both his trial counsel and counsel for his co-defendants.  Supplemental Motion Twelve raises the following grounds: (1) co-counsel made certain statements during their opening and closing arguments that prejudiced Beras;[74] (2) trial counsel did not call certain witnesses (*e.g.* co-defendant Mendoza) because of his alleged conflicts of interest arising from the joint defense agreement;[75] (3) Beras was unable to accept a guilty plea because Mendoza refused to accept it;[76] (4) counsel violated their fiduciary duty to Beras by accepting the joint defense agreement;[77] and (5) trial counsel's concession, on the record, that the case against Beras was "overwhelming" proves that he had a conflict of interest.[78]  And Supplemental Motion Six argues that trial counsel was deficient for failing to advise Beras to accept a guilty plea in light of the Supreme Court's decision in *Lafler v. Cooper*.[79]

---

[74]    *See* Supplemental Motion Twelve at 2; 10-12.

[75]    *See id*. at 10.

[76]    *See id*.

[77]    *See id*. at 12.

[78]    *Id*. at 10.

[79]    132 S.Ct. 1376 (2012) (holding that defendant was prejudiced by counsel's deficient performance in failing to advise him to accept plea offer).

**b.     Category Two: Motions that Do Not Relate Back to the Petition**

Category two, consisting of motions that raise claims that do not relate back to the Petition, is comprised of Supplemental Motions Three, Four, Five, Seven, Nine, Eleven, Thirteen, Fifteen, Sixteen, and Seventeen.  Because none of these untimely motions relate back to the Petition, they will not be considered here.  However, it is helpful to summarize their content in order to explain my conclusion that they do not relate back to the Petition.

Through Supplemental Motion Four, Beras argues that his trial counsel was ineffective because he did not object that a forensic handwriting report's admission, through the testimony of a forensic analyst who did not author the report, violated Beras's rights under the Confrontation Clause of the Sixth Amendment.[80]  Beras argues that this motion relates back to the Petition because the Petition alleges that: (1) trial counsel was ineffective in that he did not consult with Beras about an independent handwriting analyst that Beras had hired; and (2) trial counsel was ineffective in that he did not object to the admission of the

---

[80]     *See* Supplemental Motion Four at 3 ("Mr. Beras asserts here that the Forensic Laboratory Reports's admission through the testimony of Ms. Storer did violate his Confrontation Clause, and his lawyer was ineffective for his failure to raise an objection.").

statements of certain *other* non-testifying witnesses.[81]  This argument is

unpersuasive.  The nucleus of facts underpinning Supplemental Motion Four is

distinct from trial counsel's consultation with Beras, or his decision not to object to

the other witnesses.  Therefore, the motion does not relate back.  As a

consequence, neither does Supplemental Motion Sixteen, which is identical to

Supplemental Motion Four, but filed in the criminal docket.

    Through Supplemental Motion Nine, Beras argues that under *United*

*States v. Scialabba*[82] – a Seventh Circuit Case  – the trial judge's charge that

"proceeds," as used in 18 U.S.C. § 1956, referred to the gross, rather than net,

income from illegal activity was erroneous.[83]  Supplemental Motion Fifteen makes

the same argument, and moves for a stay pending resolution of the Supreme Court

cases *United States v. Santos*[84] and *Cuellar v. United States*.[85]  (The motion for a

---

[81]    *See* Reply to Government's Brief in Opposition to Petitioner's Motion
Pursuant to 28 U.S.C. § 2255 ("Reply Mem.") at 39 (citing Pet. Mem. at 15, 46-
61).

[82]    282 F.3d 475 (7th Cir. 2002).

[83]    *See* Supplemental Motion Six at 10 ("Consequently, in order for Beras
to be guilty of money laundering under the *Scialabba* Court's interpretation of
'proceeds,' the money used by Beras in the alleged money laundering scheme must
have derived from the net proceeds of the illegal drug trafficking.").

[84]    553 U.S. 507 (2008).

[85]    553 U.S. 550 (2008).

stay is moot, as both cases were resolved prior to this Opinion.)  Likewise,

Supplemental Motions Three and Five make the same argument: *i.e.*, that under

*Cuellar* and *Santos*, Beras's sentence must be vacated.[86]

      *Cuellar* holds that the concealment element of the money laundering

statute is satisfied only when the *purpose*, not merely the effect, of transporting

funds is to disguise "the nature, the location, the source, the ownership, or the

control of the proceeds of specified unlawful activity."[87]  *Santos* was a fractured

decision in which a plurality of four Justices, applying the rule of lenity, held that

"proceeds" under 18 U.S.C. § 1956 referred to net income, not gross receipts.[88]  In

a concurring opinion, Justice Stevens reasoned that "proceeds" must be limited to

net income only when there is a "merger problem" – *i.e.*, when the money

laundering count duplicates another count charged against the defendant – and

when there is no legislative history suggesting that the money laundering statute

---

[86]     Beras also discussed *United States v. Ness*, 565 F.3d 73 (2d Cir. 2009), a Second Circuit case issued in the wake of *Cuellar* and *Santos*.  In *Ness*, the Second Circuit reversed defendant's conviction because he did not transport money for the purpose of concealing it, and because a financial institution, as defined by 18 U.S.C. § 1957, was not involved in the alleged transfer of money.

[87]     18 U.S.C. § 1956(a)(2)(B)(1).  *See Cuellar*, 553 U.S. at 568.

[88]     *See Santos*, 553 U.S. at 513-14.

should apply.[89]  Justice Stevens's concern was that a contrary rule would elevate a

number of garden-variety criminal offenses into the more-serious crime of money

laundering, in contravention of the Sixth Amendment.[90]  Applying the rule adopted

in *Marks v. United States*,[91] the Second Circuit has held that Justice Stevens's

concurring opinion controls.[92]

       Beras's argument under *Cuellar* and *Santos* is that his conviction

under 18 U.S.C. § 1956(a)(2) should be vacated because the trial judge "failed to

determine and instruct the jury on whether 'proceeds' refer to gross income or net

income from the charged offense[.]"[93]  This argument does not relate back to any

of the grounds alleged in the Petition.  It is also likely without merit.  Assuming

---

[89]     *See id.* (Stevens, J., concurring in the judgment) at 524-28.

[90]     *See id.* at 527 ("Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.").

[91]     430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.").

[92]     *See United States v. Gushlak*, No. 11 Cr. 1957, 2012 WL 3854854, at *1 (2d Cir. Sept. 6, 2012) ("We have held that Justice Stevens's concurrence controls") (citing *United States v. Quinones*, 635 F.3d 590, 599 (2d Cir. 2011)).

[93]     Reply Mem. at 6.

that *Santos* applies retroactively on collateral review,[94] Beras still has the burden of

showing that the grounds charged in the Indictment present a merger problem.  It is

unlikely that he can make this showing, given that the Second Circuit has already

held, during the course of Beras's direct appeal, that Beras's convictions for money

laundering and structuring funds are not multiplicitous.[95]

In Supplemental Motion Eleven, Beras seeks dismissal of Counts 3-35

of the Indictment on the basis that the trial judge constructively amended the

Indictment by instructing the jury that the phrase "the proceeds of some form of

unlawful activity" in the money laundering statute included "proceeds from

narcotics trafficking."[96]  Beras argues that this Motion relates back to the Petition

because "this issue is related to Supplemental Motion [Nine], which was filed

within [the Antiterrorism and Effective Death Penalty Act of 1996 (the

"AEDPA")]'s one-year statute of limitations, and where Beras questions the

---

[94]     *See United States v. Thorn*, 659 F.3d 227, 234 (2d Cir. 2011)
(assuming without deciding that *Santos* applies retroactively on collateral review).
*Cf. Wooten v. Cauley*, 677 F.3d 303, 309 (6th Cir. 2012) ("[W]e agree with the
Fourth, Fifth, and Eleventh Circuits in holding that *Santos* is retroactive.")
(citations omitted).

[95]     *See Dinero Express, Inc.*, 57 Fed. App'x at 461.

[96]     Supplemental Motion Eleven at 2.

improper instruction given to the jury on the term 'proceeds' . . . ."[97]  This

argument is unpersuasive because Supplemental Motion Nine was not filed within

one year of the date when Beras's conviction became final.

Supplemental Motion Thirteen appears to allege that the Indictment

should have been dismissed based on pre-indictment delay by the Government, and

that trial counsel was ineffective for not moving for this dismissal.[98]  Beras does

not argue that this claim was alleged in the Petition;[99] in fact, the Petition states that

trial counsel *did* move to dismiss the Indictment based on its delay.[100]  Therefore,

this motion does not relate back to the Petition.

Supplemental Motion Seventeen, styled as a motion under Federal

Rule of Civil Procedure 60(b), seeks reconsideration of the District Court's

rejection of Beras's argument that it lacked territorial jurisdiction.  This motion

does not fit into any of the categories identified in Rule 60(b) justifying relief from

final judgment, and so I construe it as another motion to amend the Petition.  And

---

[97]     Reply Mem. at 40.

[98]     *See* Supplemental Motion Thirteen at 1; 10.

[99]     *See* Reply Mem. at 41 (arguing only that the claim is not procedurally
barred, not that it relates back to the Petition).

[100]    *See* Pet. Mem. at 93 ("On December 12, 1999, counsel for Mr. Beras
moved for the dismissal of the indictment on the ground the [G]overnment had
improperly delayed Mr. Beras [sic] indictment").

because this proposed amendment is untimely and does not relate back to the Petition, it will not be considered.

Finally, Beras argues through Supplemental Motion Seven that under *United States v. Gupta*,[101] his Sixth Amendment right to a public trial and the public's First Amendment right of access to criminal trials were violated, on the grounds that: (1) Judge Kram heard certain aspects of the trial – *e.g.*, Beras's not-guilty plea, a portion of his bail proceedings, and hearings related to the voir dire process and juror notes – in her robing room, rather than in open court; (2) on one occasion, Beras's defense counsel asked that Beras's wife and young children be removed from the Court because the children were too young, and might disrupt the proceedings; and (3) on another occasion, Judge Kram asked that two spectators leave the court, because it was overcrowded.[102] Supplemental Motion Seven also argues that Beras received constitutionally ineffective assistance of counsel because his trial lawyer "failed to object when the Court erred by taking a plea and conducting trial and bail proceedings in the robing room rather than in open court[][.]"[103] It is worth noting that *Gupta* was merely an application of

---

[101]    699 F.3d 682 (2d Cir. 2012).

[102]    *See* Reply Mem. at 8-9.

[103]    Supplemental Motion Seven at 1.

precedents that existed at the time when Beras's conviction became final, meaning

that he is not barred by *Teague* from presenting his court closure argument on

collateral review.

However, because this ground for relief does not relate back to the

Petition, the claim is time-barred.  I note, though, that Supplemental Motion Seven

appears to have significantly more merit than any other ground alleged in the

Petition or Supplemental Motions.[104]

### c. Category Three: Motions Not Cognizable on Section 2255 Collateral Review

Supplemental Motion One falls into the third category.  It is styled as

a "Supplemental Pleading to [Beras's] Petition Under 28 U.S.C. § 2255[,]" but it

appears to be a motion seeking reconsideration of the District Court's dismissal of

---

[104]    *Compare United States v. Alcantara*, 396 F.3d 189, 201 (2d Cir. 2005) (vacating plea because plea proceedings were held in judge's robing room without findings on the record of necessity, in violation of public's First Amendment right of access to judicial proceedings and the defendant's Sixth Amendment right to a public trial), *with United States v. Gomez*, – F.3d –, No. 10 Cr. 1095, 2013 WL 149893, at *4-5 (2d Cir. Jan. 15, 2013) (holding that exclusion of defendant's family from voir dire proceedings did not provide a basis for reversing conviction, because lack of findings on exclusion was invited by defendant, and exclusion did not "affect[] the fairness, integrity, or public reputation of judicial proceedings."). *Cf. Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (reviewing denial of petition under Section 2255, and holding that trial counsel's failure to object to court closure was not unreasonable).

Beras's motion for a new trial under Rule 33.[105]  Alternatively, Supplemental

Motion One may be a motion seeking leave to appeal the denial of Beras's Rule 33

Motion.[106]  In either case, this is not a motion cognizable under Section 2255,

which must relate to a petitioner's attack on his *sentence*.[107]  And this Court is

without jurisdiction to entertain on the merits either a Rule 33 motion, or a motion

for reconsideration, because both motions are untimely.[108]  Moreover, even if

Supplemental Motion One were properly a motion under Section 2255, it would be

time-barred, because it was filed late and does not relate back to the Petition.

---

[105]    *See* Supplemental Motion One at 9 ("The Petitioner prays that this Honorable Court dismiss the Indictment or grant[] a new trial because the district court denied to Petitioner the basic fairness that requires a number of procedural safeguards for the citizen.").

[106]    *See id*. ("Defendant wants to be able to appeal that decision [denying his Rule 33 Motion], which is a right that the Court should give to Defendant.").

[107]    *See* 28 U.S.C. § 2255(a).  *See also United States v. Gonzalez*, 291 Fed. App'x 392, 394 (2d Cir. 2008) (construing motion styled as Section 2255 motion as Rule 33 motion because it did not hew to the categories established by Section 2255).

[108]    *See United States v. Lussier*, 219 F.3d 217, 220 (2d Cir. 2000) (stating that "[T]he time limits of Rule 33 are jurisdictional.") (citation omitted); *Cyrus v. City of New York*, 450 Fed. App'x 24, 25 (2d Cir. 2011) ("An untimely motion for reconsideration is treated as a Rule 60(b) motion [for relief from a judgment or order].  It is well settled that [a]n appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal.") (quotation marks and citations omitted) (alterations in original)).

Moreover, even if it were timely and cognizable on habeas review, because it was already considered and rejected by the Second Circuit in the course of Beras's direct appeal, it would be barred by the mandate rule.  Supplemental Motion One is therefore dismissed for lack of jurisdiction.

## III.   LEGAL STANDARD

### A.   Section 2255

Section 2255 permits a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence.  Collateral relief is available under Section 2255 only if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[109]

### B.   Ineffective Assistance of Counsel

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an

---

[109]   *See* 28 U.S.C. § 2255.  *See also Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)) (stating that collateral relief under Section 2255 is permitted "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'").

objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[110]

When analyzing a claim that counsel's performance did not meet constitutional standards, "judicial scrutiny of counsel's performance must be highly deferential."[111]   The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[112]   "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[113]

Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[114]   Nonetheless, "[t]he

---

[110]    *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984).

[111]    *Id.* at 689.

[112]    *Id.*

[113]    *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

[114]    *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled."[115]

And even if an attorney's performance was objectively unreasonable, a petitioner must still prove that, as a result, he was prejudiced.[116]  To do so, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[117]  In assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial.[118]  In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."[119]

As explained by the Supreme Court, the order of analysis of the two *Strickland* prongs is at the discretion of the court:

---

[115]     *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted).

[116]     *See Stickland*, 466 U.S. at 687.

[117]     *Id*. at 694.

[118]     *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010) ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[119]     *Strickland*, 466 U.S. at 694.

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[120]

## C.    Amendments to Habeas Petitions

In *Mayle v. Felix*,[121] the United States Supreme Court addressed the intersection of Federal Rule of Civil Procedure 15 ("Rule 15") and the one-year limitation period imposed on federal habeas petitioners by the AEDPA. In *Mayle*, the question presented was whether an amended habeas petition, filed after the AEDPA's one-year limitation period and targeting the defendant's pretrial

---

[120]    *Id.* at 697, 693 ("Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense. . . [and] there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). *Accord Farrington v. Senkowski*, 214 F.3d 237, 242 (2d Cir. 2000) (stating that courts need not resolve the *Strickland* performance prong if the prejudice prong is more readily resolved).

[121]    545 U.S. 644 (2005).

statements, related back to the date of the defendant's original timely filed habeas petition, which targeted videotaped witness testimony.[122]  The Supreme Court answered this question in the negative, holding that an amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."[123]  The Supreme Court explained as follows:

> This case turns on the meaning of Federal Rule of Civil Procedure 15(c)(2)'s relation-back provision in the context of federal habeas proceedings and AEDPA's one-year statute of limitations.  Rule 15(c)(2) . . . provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  The key words are "conduct, transaction, or occurrence."  The Ninth Circuit . . . defines those words to allow relation back of a claim first asserted in an amended petition, so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence. Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto.[124]

---

[122]    *See id.* at 649.

[123]    *Id.*

[124]    *Id.* at 656-67.  Rule 15(c)(1)(B) was Rule 15(c)(2) prior to the December 1, 2007 Amendment to the Federal Rules of Civil Procedure.  Rule 15(c)(1)(B) states: "An amendment to a pleading relates back to the date of the

Rejecting the approach taken by the Ninth Circuit, the Court stated that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."[125]  The relation back doctrine described in *Mayle* has been applied repeatedly by courts in this Circuit.[126]  Finally, it is worth nothing that a claim may be time-barred even if it would not be barred by the claim preclusion doctrines discussed below.[127]

### D.    Claim Preclusion

Two separate rules of claim preclusion apply to applications for

---

original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]" This language is nearly identical to that of former Rule 15(c)(2). Thus, the two citations are interchangeable.

[125]    *Mayle*, 545 U.S. at 664.

[126]    *See, e.g., Gibson v. Artus*, 407 Fed. App'x 517, 519 (2d Cir. 2010) ("In *Mayle v. Felix*, the Supreme Court limited claims in an amended petition to those that arose from the same core facts alleged in the original petition, not those related generally to petitioner's trial, conviction, or sentence."); *Hoffenberg v. United States*, 333 Fed. App'x 625 (2d Cir. 2009); *Martin v. United States*, No. 08–CV–452, 2011 WL 5507423, at *5 (E.D.N.Y. Nov. 9, 2011); *Ermichine v. United States*, No. 06 Civ. 10208, 2011 WL 1842951, at *11 (S.D.N.Y. May 12, 2011); *Freeman v. United States*, No. 09 Civ. 4087, 2010 WL 4026067, at *2 (S.D.N.Y. Oct. 14, 2010).

[127]    *See Veal v. United States*, 334 Fed. App'x 402 (2d Cir. 2009) (affirming district court's holding that amendment to section 2255 petition alleging ineffective assistance of counsel was time barred).

collateral relief under Section 2255.[128]  The first of these rules is termed the "mandate rule."  It bars re-litigation of issues that were resolved, either explicitly or impliedly, on direct appeal.[129]  The second of these rules bars petitioners from bringing claims that could have been brought on direct appeal, unless the petitioner can show cause and prejudice.[130]

In *Massaro v. United States*, the Supreme Court held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."[131]  Subsequently, in *Yick Man Mui v. United States*, the Second Circuit extended *Massaro* to allow habeas petitioners to bring *Strickland* claims that could have been brought on direct appeal even if they had previously brought separate *Strickland* claims – *i.e.* claims with distinct factual predicates – on direct appeal.[132]  After *Yick Man Mui*, "the only barrier to raising ineffective assistance claims in a Section 2255 proceeding after raising such claims on direct appeal is the mandate rule, *i.e.*, strategies, actions, or inactions of counsel that gave rise to an ineffective

---

[128]    *See Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).

[129]    *See id*. at 53-54 (citations omitted).

[130]    *See id*. at 54 (citations omitted).

[131]    538 U.S. 500, 509 (2003).

[132]    *See Yick Man Mui*, 614 F.3d at 56-57.

assistance claim adjudicated on the merits on direct appeal may not be the basis for another ineffective assistance claim in a Section 2255 proceeding."[133]

## IV.   DISCUSSION

Many of the grounds for relief alleged in the Petition are precluded because they either could have been brought, or were brought and rejected, on direct appeal.  I will first address Beras's precluded claims, and then consider the remaining claims on the merits.

### A.   Precluded Claims

#### 1.   Ineffective Assistance of Counsel Claims Barred by the Mandate Rule

The holding in *Yick Man Mui* does not expressly answer the question of whether the mandate rule bars a petitioner from bringing an ineffective assistance of counsel claim on collateral review, when the petition brought a claim alleging the same underlying facts during direct review, which was rejected on the merits, but that did not allege ineffective assistance of counsel.  *Yick Man Mui* cites with approval *Riascos-Prado v. United States*,[134] which holds that a habeas

---

[133]   *Id*. at 57.  It is an open question whether the mandate rule would allow reconsideration of a *Strickland* claim alleging that the cumulative effect of multiple attorney errors affected the verdict, when such claim was rejected on direct appeal for lack of prejudice to the defendant.  *See id*. at 57 n.3.

[134]   66 F.3d 30 (2d Cir. 1995).  *Accord Yick Man Mui*, 614 F.3d at 53.

petitioner is barred from presenting an ineffective assistance counsel claim on collateral review that is "simply a slightly altered rearticulation of a claim that was rejected on [] direct appeal."[135]  This result makes logical sense: a claim that was raised and rejected on the merits is meritless, and an attorney's "'[f]ailure to make a meritless argument does not amount to ineffective assistance.'"[136]  Therefore, purporting to consider the merits of repackaged claims that were rejected on the merits during direct review would be a waste of scarce judicial resources.

The following grounds for Beras's present ineffective assistance of counsel claim present slightly altered rearticulations of claims that were rejected on the merits during Beras's direct appeal, and are therefore barred by the mandate rule.  *First*, Beras's argument that counsel's failure to allege selective prosecution constitutes grounds for relief was considered and rejected on the merits by the Second Circuit.[137]  Beras argues that this claim is not barred, because he has received "new evidence" that the United States Government "focused on the Dominican Republic as a country to which the proceeds of illegal narcotics trafficking were sent through money laundering, and that the Government also

---

[135]     *Riascos-Prado*, 66 F.3d at 34.

[136]     *United States v. Noble*,  363 Fed. App'x 771, 773 (2d Cir. 2010) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).

[137]     *See Beras*, 131 Fed. App'x 313.

41

focused in their investigation on Colombia as a drug source country."[138]  Besides

being discoverable earlier, this evidence does not show that "(1) others, similarly

situated to [Beras] and his company, Dinero Express, Inc., had not been prosecuted

for money laundering; or (2) the Government's decision to prosecute him was

based on an impermissible consideration such as race."[139]  The claim is therefore

barred by the mandate rule.

Second, Beras's argument that counsel's failure to move for severance

is also barred by the mandate rule, because the Second Circuit rejected it on the

merits.[140]  Beras's contention that he should be allowed to relitigate the issue

because the Second Circuit did not consider certain of his non-record-based

ineffective assistance claims on direct appeal is unavailing.[141]

And third, Beras argues that his trial counsel was constitutionally

defective for failing to introduce at trial purported exculpatory statements by Maria

Mendoza, one of his co-defendants, and Hendrix Tavares, a cooperating witness;

and that counsel should have objected to statements made by Tavares at the trial as

---

[138]   Reply Mem. at 13.

[139]   *Beras*, 131 Fed. App'x at 314.

[140]   *See Dinero Express, Inc.*, 57 Fed. App'x at 459-60.

[141]   *See* Reply Mem. at 14.

inconsistent with his plea allocution.[142]  These grounds for relief were considered and rejected by the Second Circuit during Beras's direct appeal, and are therefore barred by the mandate rule.[143]

### 2.    Other Precluded Claims

#### a.    Claims Barred by the Mandate Rule

The following three claims alleged in the Petition are precluded because they were brought and rejected during the course of Beras's direct appeal. *First*, Beras's claim that his Sixth Amendment right to a jury trial was violated because the trial court impermissibly found several enhancements to his base offense level under the Sentencing Guidelines by a preponderance of the evidence, in violation of *Apprendi* and its progeny.[144]

*Second*, Beras's claim that his Confrontation Clause rights were

---

[142]    *See* Pet. Mem. at 25-27.

[143]    *See Beras*, 152 Fed. App'x at 51.

[144]    *See id.* at 52 ("Beras asserts that he is entitled to a new sentencing in light of the Supreme Court's decision in *United States v. Booker* . . . . This argument is foreclosed by our decision in *Guzman v. United States*, holding that '*Booker* is not retroactive, *i.e.*, it does not apply to cases . . . where the defendant's conviction was final as of January 12, 2005, the date that *Booker* was issued[.]'") (quoting 404 F.3d 139, 141 (2d Cir. 2005) (citations omitted)).  *See also Dinero Express, Inc.*, 57 Fed. App'x at 462. ("We have carefully reviewed the record and conclude that the District Court's 17–level enhancement was not clearly erroneous.").

43

violated because a confidential informant did not testify despite the introduction of tape recordings of conversations involving Beras and the informant, as well as the introduction of statements made by a cooperating witness through a law enforcement agent's testimony.[145]   The Second Circuit addressed a very slight variation on this argument during direct review, and held that because "the tape recordings of the informant's statements were admitted solely to place Beras' own recorded statements in context and not for the truth of the matters asserted, the informant's credibility was simply irrelevant."[146]   Beras argues that the Court should nonetheless reconsider this argument, and retroactively apply *Crawford v. Washington* to his case.[147]   This argument is unavailing: *Crawford* is not retroactive on collateral review,[148] and, in any event, it does not help Beras, because the recordings were not introduced to prove the truth of the matters asserted.[149]

And *third*, Beras's claim that the limiting instructions given by the

---

[145]     *See* Pet. Mem. at 44-56.

[146]     *Dinero Express, Inc.*, 57 Fed. App'x at 460.

[147]     541 U.S. 36 (2004).  *See* Reply Mem. at 22.

[148]     *See Whorton v. Bockting*, 549 U.S. 406, 421 (2007) ("In sum, we hold that *Crawford* announced a 'new rule' of criminal procedure and that this rule does not fall within the *Teague* exception for watershed rules.").

[149]     *See Crawford*, 541 U.S. at 59 n.9 ("The [Confrontation] Clause [] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

trial judge did not cure the prejudice caused by certain statements made by the Government and counsel for his co-defendants during the openings and summations was likewise considered and rejected by the Second Circuit during direct review.[150]   Beras argues that this claim is not barred, because "[t]he instant argument is not based on a mistrial motion, it is based on what the Framers of this Country called [the] Confrontation Clause."[151]   Because the scope of the mandate rule is not defined by the motion that brought an issue before the court, but rather on the issue actually (or implicitly) decided, this argument fails.

### b.   Claims Precluded Because They Could Have Been Brought on Direct Review

The following two claims, which were not asserted prior to the Petition, are precluded because they could have been brought on direct appeal, and Beras has not demonstrated cause and prejudice sufficient to excuse his procedural default.  *First*, Beras challenges his conviction on the basis that defense counsel was not permitted to examine a law enforcement witness regarding a cooperating

---

[150]     *Dinero Express, Inc.*, 57 Fed. App'x at 460-61 ("In any event, the District Court cured any risk of prejudice by instructing the jury of the [G]overnment's burden of proving each defendant's guilt beyond a reasonable doubt, and reminding the fact-finders of their duty to evaluate the evidence against each defendant independently.").

[151]     Reply Mem. at 23.

witness's criminal history.[152]  Specifically, Beras's strategy at trial was to pin the

money laundering conspiracy on the cooperating witness, which Beras's counsel

attempted to do by eliciting testimony about the witness's prior criminal history

from a testifying law enforcement witness.[153]  The trial judge sustained the

Government's objections to this line of questioning,[154] and Beras argues that he

was "thus denied the right of effective cross-examination . . . ."[155]

       Beras argues that cause exists for his default of this claim, on the basis

that his appellate counsel's failure to raise it on direct review constituted

ineffective of counsel, providing cause for the default.[156]  Because Beras raises this

explanation for his default for the first time in his reply brief, it is waived.[157]

---

[152]    *See* Pet. Mem. at 69-74.

[153]    *See id*. at 72-73.

[154]    *See id*. at 72.

[155]    *Id*. at 74.

[156]    *See* Reply Mem. at 25 ("Beras's claim was not exhausted in the court of appeals because his appellant counsel was ineffective. . . . Beras has a Constitutional right to counsel on direct appeal . . . and his trial lawyer and appellate counsel failed to raise this issue, either in the district court or the appellate court.") (citations omitted).

[157]    *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 202 (2d Cir. 2005) (arguments first raised in reply brief not properly before court).  Moreover, to the extent that Beras now raises an ineffective assistance of *appellate* counsel claim, this claim does not relate back to a transaction, event, or occurrence alleged in the Petition.  Accordingly, it is time-barred.

Moreover, on the merits, ineffective assistance of counsel does not provide cause for Beras's default.  Beras sat through the entire trial, and had ample opportunities to make this record-based claim during his direct appeal.  He cannot point to an objective factor, external to him, that prevented his appellate counsel from raising this argument on direct appeal.[158]  Nor can Beras show prejudice.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."[159]  The objections to trial counsel's questions were properly sustained, as he was attempting to elicit hearsay testimony from the law enforcement witness about another witnesses's past criminal conduct.[160]  Therefore, the claim is barred.

*Second*, Beras claims that his right to a fair trial was violated when certain information was shared by his attorney with defense counsel for co-defendants, causing his co-defendants to present a defense "antagonistic" to Beras's interests.[161]  Specifically, Beras's argument appears to be that counsel for

---

[158]    *Cf. Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993).

[159]    *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012) (quotation marks and citation omitted).

[160]    *See United States v. Jones*, Nos. 96-1438, 96-1451, 1997 WL 722938, at *6-7 (2d Cir. Nov. 19, 1997) (in analogous circumstances, holding that "the district court did not abuse its discretion in precluding certain Rule 404(b) and Rule 806 evidence proffered by Krantz, and the preclusion of that evidence did not constitute a violation of Krantz's right to present a defense").

[161]    *See* Pet. Mem. at 102-03.

47

his co-defendants knew that he claimed to be innocent of the charged offenses, but nonetheless "told the jury, point blank, that [he] [was] guilty of the charges[,]" based on information that his trial counsel allegedly shared with them.[162]   Beras did not attempt to excuse the default of this claim until arguing that it was caused by ineffective assistance of counsel in his reply brief.   As with the claim discussed above, this untimely excuse is therefore waived, and, to the extent it rests on ineffective assistance of appellate counsel, it is also time-barred.   Moreover, the Second Circuit held during Beras's direct appeal that his co-defendants' defenses did not prejudice him,[163] meaning that counsel was not ineffective for failing to object or raise this argument on appeal.   Accordingly, this claim, too, is barred.

### B.   The Remaining Grounds for Relief Are Without Merit

Beras's remaining claim is for ineffective assistance of counsel, on the grounds that his lawyer failed to: (1) investigate and prepare adequately for trial; (2) properly advise Beras to plead guilty; (3) object, on the basis of the federal anti-gratuity statute, to the Government's use of recorded conversations and testimony of a cooperating witness; (4) permit Beras to testify on his own behalf, as well as call various expert witnesses to testify; (5) object to allegedly bolstering

---

[162]      Reply Mem. at 27.

[163]      *See Dinero Express, Inc.*, 57 Fed. App'x at 459-60.

statements made during the Government's summation; and (6) argue for suppression of wiretap evidence that was not properly sealed.  I conclude that all of these grounds for relief are meritless.

       **1.**       **The Government's Summation Statements Did Not Include Improper Bolstering, and Therefore Did Not Amount to Prosecutorial Misconduct**

This ground for Beras's ineffective assistance claim reiterates the argument that Beras made in his pro se petition for a rehearing, namely that certain statements in the Government's summation, such as "the [G]overnment submits to you that Mr. Tavare[s] was being completely truthful[,]"[164] constituted improper vouching.[165]  Specifically, in the Petition, "Beras claims that his counsel was ineffective for failing to object to the prosecutor['s] improper remarks."[166]

Prosecutorial statements "in which the prosecutor submit[s] certain credibility conclusions for jury consideration [] do not qualify as vouching."[167] Therefore, there is no need to consider whether Beras's counsel's performance was defective — this ground for relief fails because Beras was manifestly not

---

[164]    Tr. at 1605.

[165]    *See* Reply Mem. at 16 (citations omitted).

[166]    *Id*. at 17.

[167]    *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004).

prejudiced.[168]

> **2.** **Counsel's Failure to Object on the Basis of the Federal Anti-Gratuity Statute Does Not Constitute Ineffective Assistance of Counsel**

Beras argues that his trial counsel was constitutionally ineffective for failing to object to Tavares's testimony and to the Government's use of conversations recorded with the consent of a confidential informant.[169] Specifically, Beras alleges that his counsel should have argued that the Government violated the federal anti-gratuity statute, because these witnesses received pecuniary benefits and/or offers of leniency from the Government for their cooperation.[170]

The federal anti-gratuity statute states in part that: "[w]hoever … otherwise than as provided by law for the proper discharge of official duty . . . directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial" is guilty of a crime.[171] The Second Circuit has

---

[168]   *See Farrington*, 214 F.3d at 242.

[169]   *See* Pet. Mem. at 62-67.

[170]   *See* Reply Mem. at 28.

[171]   18 U.S.C. § 201(c)(2).

unambiguously held that "18 U.S.C. § 201(c)(2) does not apply to the United States or to any Assistant United States Attorney acting within his or her official capacity[,]"[172] for example by conferring a benefit upon a witness in exchange for her cooperation.  Contrary to the argument advanced in Beras's reply brief,[173] this rule applies regardless of whether the benefit is pecuniary or an offer of leniency.[174]  Beras was therefore not prejudiced by counsel's failure to make this argument, and this grounds for relief must be rejected.

### 3.     Trial Counsel's Alleged Failure to Properly Advise Beras to Plead Guilty Does Not Constitute Ineffective Assistance of Counsel

Beras also claims that he received ineffective assistance due to trial counsel's failure to "properly advise" him to plead guilty.[175]  To be accurate, Beras does not contend that his trial counsel advised him not to plead guilty.[176]  Instead,

---

[172]    *United States v. Stephenson*, 183 F.3d 110, 118 (2d Cir. 1999).

[173]    *See* Reply Mem. at 28.

[174]    *See United States v. Cirineo*, 31 Fed. App'x 760, 761 (2d Cir. 2002) (rejecting defendant's argument "that the district court erred in failing to suppress the testimony of informants who were paid and promised leniency in exchange for their testimony, in violation of the federal anti-gratuity statute, 18 U.S.C. § 201(c)(2)[,]" on the grounds that  the anti-gratuity statute "'does not apply to the United States or to any Assistant United States Attorney acting within his or her official capacity'") (quoting *Stephenson*, 183 F.3d at 118)).

[175]    Pet. Mem. at 30.

[176]    *See id*. at 30-32.

Beras argues that he received ineffective assistance because "counsel failed to solidify a plea of guilty [which] Petitioner offered to accept[;]" *i.e.*, secure a plea deal on terms that were amenable to Beras.[177]

According to the Petition, at some point prior to trial, the Government offered the defendants a global plea deal of five years' imprisonment, but this offer was rescinded when Beras's co-defendants refused to accept it.[178]  The Petition further alleges that after the global plea offer was rescinded, Beras informed his counsel that he was willing to plead to ten years, and claims that, because counsel was unable to secure such a plea from the Government, he was forced to stand trial.[179]  However, in Supplemental Motion Twelve, Beras alleges that the ten-year plea was offered by the *Government*, and that it was rescinded because his co-defendant would not take it.[180]

---

[177]     *Id.* at 31.

[178]     *See id.*

[179]     *See id.* at 31 ("Petitioner, in the office of trial counsel present with attorney for [] Tavare[s] presented a term of ten years imprisonment on a plea of guilty.  This in exchange to avoid Mr. Tavare[s]'s trial testimony. . . . [C]ounsel failed to solidify a plea of guilty [] [which] Petitioner offered to accept, thus[] compelling Petitioner to trial by jury on all counts of the [I]ndictment.").

[180]     *See* Supplemental Motion Twelve at 10 ("Another defense avenue not open to Petitioner was to accept a plea agreement of Six (6) months of incarceration; seven (7) years or ten (10) years incarceration, proposed by the Government, due to his co-defendant Maria Mendoza refusing to pled guilty, thus

The Petition also alleges that, at some point — presumably before the global plea offer — Beras chose not to accept a plea offer for six to twenty-four months imprisonment, because his counsel advised him that Government intended to produce a tape-recorded conversation in which Beras allegedly referred to cocaine, and Beras was certain that he was not the speaker.[181]  However, the Petition also refers to six to twenty-four months of imprisonment as the estimation of Beras's sentence that Beras's trial counsel gave at an interview shortly after being retained.[182]  Due to this fact, and its disparity with the global plea offer, I do not credit Beras's unsupported allegation that he received a six to twenty four month plea offer.

In sum, Beras's argument is that his counsel was constitutionally ineffective because he did not succeed in convincing Beras to plead guilty, or in

_____

[rejecting] the government's collective plea offer.").

[181]   *See* Pet. Mem. at 8 ("In considering a plea of guilty, counsel's advisement failed to properly apprise thereof.  Upon prosecution offering less than five years imprisonment due to Petitioner's alleged presence and statement referring to 'cocaine' during recorded discussion.  Notifying counsel that the voice was not Petitioner's, not further discussion for a plea of guilty incurred. This plea offer being from 6-24 months imprisonment."). *Cf.* Reply Mem. at 29 ("Defense counsel communicated Beras of several pleas offered by the [G]overnment, (6 to 24 months of imprisonment. . . .").

[182]   *See* Pet. Mem. at 30 ("Trial counsel initially advised Petitioner that a term of imprisonment thereof 6 to 24 months would plausibly be imposed. This occurring on an interview with counsel upon being retained.").

53

securing a guilty plea on Beras's terms.[183]  In the context of pleas, *Strickland*'s

performance prong "requires a defendant to show that counsel's representation fell

below an objective standard of reasonableness," while its prejudice prong requires

that the defendant "show the outcome of the plea process would have been

different with competent advice[,]"[184] *i.e.*, that "but for the ineffective advice of

counsel there is a reasonable probability that the plea offer would have been

presented to the court[,] . . . that the court would have accepted its terms, and that

the conviction or sentence, or both, under the offer's terms would have been less

severe than under the judgment and sentence that in fact were imposed."[185]  Beras

cannot show that his trial counsel's performance was unreasonable, and in any

event, he did not suffer any prejudice stemming from counsel's performance.

   As to the performance prong, the evidence shows that Beras's counsel

diligently kept Beras apprised of the Government's case, and attempted to get him

to accept a plea, but that Beras refused.  This conclusion is informed by the record

---

[183] *See* Reply Mem. at 29 ("Instead of informing Beras on the merits of
the case, counsel advised Beras that he should have pled guilty based on the
[G]overnment's erroneous believe that Beras has stated the word 'cocaine' during
a recorded conversation, and that Beras had to convince his codefendants to plea
guilty.").

[184] *Lafler*, 132 S.Ct. at 1384 (citations and quotations omitted).

[185] *Id.* at 1385.

of the professional malpractice action that Beras brought in this District against his trial counsel (the "Malpractice Action").[186]   Notably, Beras attached several documents from the docket sheet of the Malpractice Action to Supplemental Motion Twelve.  I hereby take judicial notice of the docket sheet and record of the Malpractice Action, to which Beras was a party.[187]

In the Malpractice Action Beras alleged, among other things, that counsel was defective for failing to explore the "'avenue'" of a plea agreement.[188] The Malpractice Action was dismissed when the motion for summary judgment of Beras's trial counsel in the current case was granted by the late Judge Charles L. Brieant, Jr., who adopted the Report and Recommendation of Magistrate Judge Lisa M. Smith.  Subsequently, "Beras appealed the dismissal of his complaint, and on June 20, 2006, [the Second Circuit] dismissed his appeal because it 'lack[ed] an

---

[186]   *See Beras v. Ross*, No. 03 Civ. 9026, initiated on November 14, 2003.

[187]   *See* Fed. R. Evid. 201, 1005.  *See also Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 157 (1969) (stating "we may properly take judicial notice of the record in that [prior] litigation between the same parties who are now before us"); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of district court opinion) (collecting cases) (citations omitted).

[188]   2/3/05 Report and Recommendation Regarding Ross's Motion for Summary Judgment ("Report and Recommendation"), No. 03 Civ. 9026, Docket No. 43, at 2 (quoting Complaint ¶ 18).

55

arguable basis in fact or law.'"[189]

The order dismissing the Malpractice Action was predicated on the rule that, under New York law, "'a plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense'" in order to state a malpractice claim arising out of legal representation in a criminal case.[190] Therefore, the Second Circuit's mandate in affirming the dismissal of the Malpractice Action does not extinguish the duplicative claims that Beras asserts in the Petition.[191]   Nevertheless, the record developed in the Malpractice Action is highly probative with respect to Beras's instant claim.

Regarding Beras's allegation that counsel did not explore the avenue of a plea agreement, the Report and Recommendation states that:

---

[189]   *Beras v. Carvlin*, 313 Fed. App'x 353, 354 (2d Cir. 2008) (quoting June 20, 2006 Second Circuit Summary Order Dismissing Appeal of the Malpractice Action).  In *Beras v. Carvlin*, Beras claimed that his *co-defendants'* counsel committed malpractice.  It was dismissed by the district court on the grounds of res judicata, and this disposition was affirmed by the Second Circuit. *See id*. at 355.

[190]   Report and Recommendation at 12 (quoting *Carmel v. Lunney*, 70 N.Y.2d 169, 173 (1987)).

[191]   *Cf. Purdy v. Zeldes*, 337 F.3d 253, 256 (2d Cir. 2003) (holding that criminal defendant who lost on the merits a *Strickland* claim brought under Section 2255, and alleging deficient performance of counsel in connection with the plea bargaining process, was collaterally estopped from subsequently bringing a malpractice claim alleging the same facts).

Defendant [Beras's trial counsel] met with Plaintiff a number of times in an effort to convince him to plead guilty to the charges in the Indictment.  Defendant also arranged for Attorney William Randolph, corporate counsel for Dinero Express, and Attorney Steven Brounstein, the attorney representing Tavares, to meet with Plaintiff to relay the enormity of the evidence against him, and the extreme likelihood that proceeding to trial would result in his conviction.  However, convinced of his innocence, Plaintiff declined to agree to a plea offer and decided to take his chances at trial.[192]

This summary of the facts is supported by a deposition that Beras gave in connection with the Malpractice Action, in which Beras testified that he was not interested in taking a plea because he was convinced he would be acquitted.[193]  It is also supported by the affidavit of Robert C. Gottlieb, counsel for Beras's co-defendant Maria Mendoza, which states that Beras's trial counsel "kept his client apprised of the strength of the Government's case against him and of potential plea arrangements throughout the course of the Criminal Action.  The claim[] against [Beras's trial counsel] herein of . . . failure to apprise Mr. Beras of possible opportunities to take a guilty plea and avoid the sentence he now faces [is], to my knowledge, entirely unfounded."[194]

---

[192]    Report and Recommendation at 6 (citations omitted).

[193]    *See id*. (citing Deposition of Roberto Beras ("Beras Dep.") at 255).

[194]    8/19/04 Affidavit of Robert C. Gottlieb ("Gottleib Aff.") ¶ 13, Ex. 7 to Supplemental Motion Twelve.

Finally, the Report and Recommendation's statement of facts regarding counsel's performance is supported by the affidavit and billing records submitted by Beras's trial counsel.  Through this affidavit, Beras's counsel states that: "I met with Beras on myriad occasions to attempt to impress upon him the magnitude of the government's evidence against him, and emphasize my belief that he should plead guilty[.]"[195]  This statement is substantiated by counsel's billing records, which document numerous attempts to convince Beras to plead guilty.[196]  These attempts met with no success, likely because Beras harbored a highly

---

[195]    10/19/04 Affidavit of Charles A. Ross, Esq., No. 03 Civ. 9026, Docket No. 29, ¶ 24.

[196]    *See, e.g.,* 6/29/01 Time Reports at 2 ("Recommended plea to client who said if govt. offered 3 months he would not take it. Gave copy of guidelines, went over handwriting, informants and tapes."); *id.* at 9 ("Met with client; advised him that after trial his guideline is 360-life. Told him he had no chance of winning the case.  Review devastating evidence linking him [to money laundering] . . . proof.  Review proposed plea agreement. Gave client a copy of the plea agreement. Advised him unequivocally to accept it."); *id.* at 10 ("Met with Beras; again advised him to take plea; he refuses to consider a sentence at 108 or 121 months."); *id.* at 14 ("Office meeting with client . . . wished to go forward with preparation for hearing and trial despite my request that he reconsider and think about a plea."); *id.* at 17 ("Meeting with Beras; advised him all over again that he had no chance to win the case; that the tape was coming into evidence; that Aschkenasy's mistake with the scotch tape totally damaged his credibility; that the company has no defense and that he should in no uncertain terms plead guilty. Beras said if they offered him 18 months he might consider it otherwise he was going to trial.").

unrealistic view of the probability of his prevailing at trial.[197]

In sum, counsel diligently attempted to convince Beras to plead guilty, but failed.  The instant *Strickland* claim therefore hangs on a very thin reed.  Beras alleges that, on one occasion, counsel misstated the evidence in attempting to convince Beras to plead guilty, and argues that counsel should have gone about convincing Beras to plead guilty in a different fashion.[198]  However, as just discussed, the record of the Malpractice Action reveals that counsel made numerous attempts to convince Beras to plead guilty.  Therefore, even if Beras is correct that counsel misstated the evidence during one of those attempts, this allegation does not support the instant *Strickland* claim.

---

[197]    *See* Gottlieb Aff. ¶ 12 ("During the trial, which I participated in as counsel for Ms. Mendoza, I recall the testimony and evidence presented against Mr. Beras was substantial.  Among other things, there were tapes of him discussing the money laundering at issue with others, which made clear that drug money was involved, there were ledgers regarding the money laundering in his handwriting, and there was testimony from the Dinero Express bookkeeper explaining how the money was laundered.  In spite of all this evidence and testimony at trial presented against him, however, Mr. Beras gave me the impression that he was almost delusional about how the trial was going—often expressing pleasure at how things were proceeding on days where it was clear that he was being directly implicated in criminal activity.").

[198]    *See* Reply Mem. at 29 ("By misleading Beras as to the word cocaine being mentioned by him on the recorded conversation, and by placing Beras in the difficult situation of convincing his codefedants to plea guilty, and coercing Beras to do so, defense counsel's advise [sic] fell outside the realm of professional competence.").

Beras does not allege the facts that normally accompany a meritorious *Strickland* claim relating to plea negotiations.  He does not allege that counsel failed to apprise him of the strength of the Government's case or communicate plea offers made by the Government.  Nor does he allege that counsel gave him incorrect legal advice.  Moreover, even if counsel miscalculated the Government's willingness to accept a plea, "miscalculations regarding the Government's willingness to negotiate a more favorable deal or restore its initial plea offer represent, at best, strategic errors that are 'virtually unchallengeable[.]'"[199]

The  "ultimate decision whether to plead guilty must be made by the defendant," and therefore "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer."[200]  It follows that counsel's *failure* to persuade Beras to plead guilty cannot, without more, constitute unreasonable performance under *Strickland*.  The choice of whether to plead guilty was Beras's to make.  The fact that he now regrets the choice that he made does not mean that his counsel

---

[199]    *Lake v. United States*, 465 Fed. App'x 33, 35 (2d Cir. 2012) (quoting *Strickland*, 466 U.S. at 690) (affirming denial of petition under Section 2255 without an evidentiary hearing, and holding that, despite the fact that defendant relied to his detriment on counsel's erroneous advice to reject Government plea offer, counsel's professional lapse did not amount to ineffective assistance of counsel, because it did not involve, *e.g.*, a deficient investigation, a legal error, or a complete failure to render advice).

[200]    *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000).

acted unreasonably.

Furthermore, Beras likely would not have accepted any plea that was actually offered (or likely to be offered), and so he was not prejudiced by his counsel's performance.  Prior to the global plea offer, "despite [his counsel's] very direct and unequivocal representations to Mr. Beras of the strengths of the Government's case against him, and the wisdom of pleading guilty to the charges in return for a reduced sentence, Mr. Beras refused to consider taking a plea."[201] After the global plea offer, "[t]he possibility of Mr. Beras pleading guilty . . . became moot[,]" because this plea was contingent on "[co-defendant] Mendoza pleading guilty — something she never even considered."[202]

In short, because of Beras's belief that he would be acquitted, he would not have taken any plea likely to be available to him.  It therefore cannot be said that "but for the ineffective advice of counsel there is a reasonable probability that [a] plea offer would have been presented to the court[.]"[203] Accordingly, Beras was not prejudiced by his counsel's performance.

I am cognizant of the harsh disparity between the global plea offer and

---

[201]    Gottlieb Aff. ¶ 11.

[202]    *Id*.

[203]    *Lafler*, 132 S.Ct. at 1385.

61

the sentence that Beras eventually received.[204]  Other than pleading to the

Indictment, Beras had no plea offer to accept or reject other than the global plea;

and because Mendoza would not have considered the global plea, Beras effectively

received no plea offer at all.[205]  In these circumstances, it is not surprising that

Beras thinks that his counsel could have done more to secure a favorable plea.

Even in view of the disparity between the global plea and Beras's

sentence, I cannot find ineffective assistance of counsel on these facts.  Beras

consistently rebuffed his trial counsel's suggestions that he plead guilty, even on

terms far more favorable than a plea to the Indictment.[206]  This negates any

prejudice arising out of the disparity between Beras's sentence and the sentence

that he would have gotten had he pleaded to the Indictment.  Moreover, Federal

Rule of Criminal Procedure 11 does not obligate the Government to make any plea

---

[204]    *Cf. Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (holding
that, as to the prejudice prong of *Strickland* in the plea context, "a significant
sentencing disparity in combination with defendant's statement of his intention [to
plead guilty] is sufficient to support a prejudice finding.").

[205]    I note that offering a group of co-defendants the choice of accepting a
global plea or pleading to the indictment is somewhat unfair as it forces a
defendant to depend upon his co-defendants.  However, given Beras's adamant
refusal to plead guilty on any terms likely to be available to him, the propriety of
this practice is not at issue in this case.

[206]    *See* Report and Recommendation at 6 ("[C]onvinced of his innocence,
Plaintiff declined to agree to a plea offer and decided to take his chances at trial.)
(citing Beras Dep. at 255).

offer at all.  Thus, counsel's failure to secure a plea offer, standing alone, cannot constitute ineffective assistance of counsel.[207]

      One final contention bears note.  In his reply brief, Beras argues for the first time that counsel was ineffective because he did not apprise Beras of his right to plead to the Indictment, but instead "coerc[ed] [him] to convince his codefendants to plea[d] guilty."[208]  As an initial matter, Beras waived this argument by raising it for the first time in his reply brief.[209]  And even if it were properly before the Court, it would not justify granting habeas relief.  It stretches credulity to believe that Beras's experienced trial counsel, in all of his attempts to persuade Beras to plead guilty, neglected to mention that Beras could plead to the Indictment.  And even if counsel made this improbable lapse, no prejudice arose from it.  As laid out above, substantial evidence shows that Beras would not consider a relatively lenient plea; *a fortiori*, he also would not have pled to the

---

[207]    *Cf. Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012) ("[A] defendant has no right to be offered a plea, nor a federal right that the judge accept it.") (citations omitted).

[208]    Reply Mem. at 30 ("Defense Counsel should have offered Beras the opportunity to plea[d] guilty pursuant to a straight or open plea, instead of coercing Beras to convince his codefendants to plea[d] guilty.").

[209]    *See Broder v. Cablevision Systs. Corp.*, 418 F.3d 187, 202 (2d Cir. 2005) (arguments first raised in reply brief not properly before court).  *See also Melo v. United States*, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (same).

Indictment.

In the end, the heart of this matter is that Beras's trial counsel kept him apprised of the strength of the Government's case and repeatedly attempted to persuade him to plead guilty, but Beras chose to ignore this advice. These circumstances do not give rise to a *Strickland* claim. As the Second Circuit has stated, "[t]he Sixth Amendment [] requires that counsel be effective, not that counsel be heeded."[210] In light of the foregoing, counsel's plea-negotiation performance was not professionally unreasonable, and Beras was not prejudiced thereby.

### 4. The Remaining Grounds for Relief Fail Because they Amount To Second-Guessing Counsel's Reasonable Trial Strategy

Beras's remaining claims relate to his trial counsel's strategic decisions regarding how to investigate and present Beras's case at trial. Specifically, Beras argues that he received ineffective assistance because trial counsel failed to: (1) investigate and prepare adequately for trial;[211] (2) interview witnesses such as a handwriting analyst and a certified public accountant;[212] (3)

---

[210]    *Brown v. Doe*, 2 F.3d 1236, 1245 (2d Cir. 1993).

[211]    *See* Pet. Mem. at 14-15.

[212]    *See id*. at 15-16.

introduce expert witnesses at trial, including "New York Banking Commission Officers and Auditors; Internal Revenue Service Personell [sic] and auditors; Accountants for Dinero Express (Internal and External); President and Corporate Attorney for Dinero Express; Private Investigator Donald Dwyer . . . Audio Tape Analyst; Interpreter; Certified Public Accounts; [and] Handwriting Expert";[213] (4) argue for the suppression of allegedly tampered-with wiretap evidence;[214] and (5) permit Beras to testify on his own behalf.[215]

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable,"[216] the *Strickland* inquiry is "highly deferential."[217] "In evaluating whether counsel's performance was deficient, '[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common

---

213     *Id*. at 16.

214     *See id*. at 95.

215     *See id*. at 75.

216     *Strickland*, 466 U.S. at 689.

217     *Id*.

65

custom.'"[218]

In particular, "'[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess."[219]  Further, although defense attorneys have a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary[,]"[220] "'when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.'"[221]

In light of this standard of review, I conclude that trial counsel's strategic decisions were not unreasonable under *Strickland*.  During the trial, Beras labored under the misconception that the Government's case against him was weak.[222]  Beras's current challenges to his trial counsel's strategy stem from the

---

[218]    *United States v. Dawes*, No. 11 Cr. 1617, 2012 WL 3832456, at *3 (2d Cir. Sept. 5, 2012) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (further quotation marks and citations omitted)).

[219]    *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam)).

[220]    *Strickland*, 466 U.S. at 691.

[221]    *Ryan v. Rivera*, 21 Fed. App'x. 33, 35 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691).

[222]    *See* Gottlieb Aff. ¶ 12.

same misconception.  He insists that "the case primarily rested on the testimony of cooperating witness Hendrix Tavare[s][,]" and that "defense counsel was ineffective for his failure to investigate all witnesses who may have information concerning Beras['s] innocence."[223]

Beras fails to appreciate that the strength of the Government's case was overwhelming.  The Government presented, among other things, tape recordings of Beras discussing laundering drug money; ledgers regarding the money laundering bearing his handwriting; a wire-transfer form authorizing the illicit transfer of funds signed by Beras; evidence that Beras had received large, illicit payments from Dinero Express; and testimony regarding how the money-transfer scheme worked.[224]

Beras's trial counsel struggled valiantly to refute this evidence by arguing that Beras's co-conspirator, Liriano, was the mastermind behind the scheme, and that cooperating witness Tavares had perjured himself to secure leniency.[225]  This attempt ultimately failed, but it hardly "amounted to

---

[223]   Reply Mem. at 32.

[224]   *See* Tr. (Beras's Closing Argument) at 1662-1720.

[225]   *See id*.

incompetence under prevailing professional norms[.]"[226]  And it is improbable that the result would have been any different had Beras's counsel adopted the tactics suggested in the Petition, for example calling as a witness the "United States Treasure [sic] Department" to explain "why Dinero Express was issued [a] license [] [despite] being targeted for money laundering[,]" or calling "Fidelifact[,] [w]ho[] conducted background investigation of Dinero Express and its Employees[,]" to testify as to "whether [they] discovered any violations for money laundering or other unethical practices."[227]

The overwhelming strength of the Government's case also indicates that Beras was not prejudiced by counsel's failure to adopt his post-hoc tactical suggestions.  Therefore, I conclude that Beras's trial counsel's strategy does not constitute ineffective assistance of counsel.  Accordingly, the Petition must be denied.

## V.    CONCLUSION

For the foregoing reasons, the Petition is denied.  The Clerk of the Court is directed to close all outstanding motions in the criminal case (99 Cr. 075, Doc. Nos. 111, 112, 118, 119, 124, 132, 134, 140, 142, and 143) as well as in the

---

[226]    *Harrington*, 131 S.Ct. at 778.

[227]    Reply Mem. at 31.

civil case (05 Civ. 2678, Doc. Nos. 2, 3, 10, 11, 13, 17, and 25). The Clerk of the Court is further directed to close case number 05 Civ. 2678.

The only issue that remains is whether to grant a Certificate of Appealability ("COA"). For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[228] A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[229] Beras has not made this showing. Accordingly, I decline to issue a COA.

---

[228]   28 U.S.C. § 2253(c)(2).

[229]   *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle,* 463 U.S. 880, 893 and n.4 (1983) (quotation marks and citations omitted)). *Accord Middleton* v. *Attorneys Gen. of the States of New York and Pennsylvania,* 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March  20 , 2013

70

**- Appearances -**

**Petitioner (Pro Se):**

Roberto Beras
Register # 45865-054
Elkton Federal Correctional Institution
P.O. Box 10
Lisbon, OH 44432

**For Respondent:**

Tatiana R. Martins
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-1944